# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY LUELLEN, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>WEXFORD HEALTH SOURCES, INC., )<br>SIDDIQUI, )<br>FRIERDICH, )<br>BALDWIN, )<br>LASHBROOK, )<br>and CALDWELL, )<br>)<br>Defendants. | Case No. 19-cv-151-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Larry Luellen, Jr., an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was exposed to unconstitutional conditions of confinement at Menard and that Defendants were deliberately indifferent to his asthma, in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

Plaintiff makes the following allegations in his Complaint (Doc. 1): While housed at Menard, Plaintiff has experienced filthy living conditions in all areas of the prison. His cell walls are covered in spit and blood, his toilet is covered in feces, urine, and bacteria stains, and his sink is covered in blood and spit stains. (*Id.* at pp. 4-5). The floor of his cell is covered in dirt, dust, and hair balls. His bed and sheets are covered in rust. Plaintiff is not provided any cleaning supplies. (*Id.*).

The vents inside of the cell are covered in lint, dirt, and dust. (Doc. 1, p. 6). The ceiling fans outside of the cells are also covered in dust and, when turned on, the fans spread dust and debris into the air. (*Id.*). The shower in the cellhouse is covered in black mold as is the med tech room where Plaintiff sees doctors and nurses. Both the med tech room and the dining room have spiders, roaches, and mice. (*Id.* at p. 7). The dining room also has birds flying around while the inmates are eating. (*Id.*). The dust, debris, and bacteria in the air irritates Plaintiff's asthma and causes him to have asthma attacks. (*Id.* at pp. 6-8).

The warm water goes out on numerous occasions in the dining room, making cleaning trays and cups in the dining room difficult. Plaintiff's trays and cups are often covered in leftover food and grease. (*Id.*). The prison has been under a boil water order on numerous occasions and on one occasion, Plaintiff was only provided with five Styrofoam cups of water over the course of three days. (*Id.* at p. 8). Plaintiff needs water in order to take his medication and also believes that water helps with his high blood pressure. (*Id.* at p. 9). During the boil water order, Plaintiff had headaches and constipation due to the limited supply of water. (*Id.*).

Menard also lacks a proper ventilation and heating/cooling system. (Doc. 1, pp. 12-13). The cells are well over 100 degrees in the summer. The cell house doors are left open to allow for

air flow, but it also allows in all manner of insects and pests. The open cell houses also allow mold, pollen, and dust into Plaintiff's cell, further irritating his asthma. (*Id*. at p. 12). In winter, the prison uses propane heaters to heat the cell house and the fumes irritate Plaintiff's asthma. (*Id*. at p. 13).

Plaintiff learned from a nurse that Wexford Health Sources, Inc. ("Wexford") is in charge of reviewing the prison for hazardous and toxic conditions but the Illinois Department of Corrections ("IDOC") administration were not enforcing that contractual provision. (Doc. 1, p. 10). Plaintiff wrote letters to Medical Director, Dr. Siddiqui about the conditions of the prison and its affects on his asthma, but Dr. Siddiqui did nothing. (*Id*. at pp. 10, 15). Jacqueline Lashbrook and John Baldwin were also aware of the conditions but did nothing, nor would they provide cleaning supplies to Plaintiff. The actions of the defendants with respect to these conditions constituted intentional infliction of emotional distress.

As a result of the conditions in his cell and the rest of the prison, Plaintiff experienced an increase in asthma attacks. Although he informed Dr. Siddiqui and Dr. Caldwell that he suffered from attacks, they refused to provide him with an asthma pump. (Doc. 1, pp. 11, 17). Plaintiff had to barrow a pump from other inmates when he had an attack. (*Id.*). Dr. Caldwell eventually prescribed Plaintiff with Singulair for Plaintiff's allergies and sinuses that he suffered as a result of the mold and dust in the air. (*Id*. at pp. 19-20). Plaintiff, however, had a bad reaction to the medication. His heart began beating fast and irregular, he was sweating, his hands were shaking, his mouth was dry, and he had a difficult time breathing. (*Id*. at p. 20). But because of Wexford's policy of understaffing the healthcare unit, no nurses were sent to see him, nor was he taken to the healthcare unit. (*Id.*). Although Plaintiff submitted sick call slips on August 3, 2018 and August 7, 2018, he was not seen by the healthcare staff. (*Id*. at p. 21). Plaintiff submitted an emergency

3

grievance, which was deemed an emergency by Lashbrook, but Dr. Siddiqui and nurse supervisor Frierdich found that Plaintiff had not submitted a sick call request. (*Id*. at p. 22). Although the grievance put Dr. Siddiqui and Frierdich on notice that Plaintiff needed care for his reaction to the medication, he was not seen by a medical provider until sometime after August 17, 2018. (*Id*. at pp. 22-24). Their failure to take Plaintiff's concerns seriously and see him immediately were due to a Wexford policy instructing providers to view inmate's complaints with suspicion. (*Id*. at pp. 24, 33-34). Although he informed Dr. Siddiqui, Dr. Caldwell, and Frierdich of his reaction to the medication, they continued to prescribe him Singulair.

## **Discussion**

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following five Counts:

> **Count 1:** **John Baldwin, Jacqueline Lashbrook, and Dr. Siddiqui were deliberately indifferent under the Eighth Amendment to Plaintiff's conditions of confinement at Menard.**
>
> **Count 2:** **The failure to remedy Plaintiff's cell conditions by John Baldwin, Jacqueline Lashbrook, Dr. Siddiqui, and Wexford amounted to intentional infliction of emotional distress.**
>
> **Count 3:** **Dr. Siddiqui and Dr. Caldwell were deliberately indifferent under the Eighth Amendment when they refused to give Plaintiff an inhaler for his asthma.**
>
> **Count 4:** **Dr. Siddiqui, Frierdich, and Dr. Caldwell were deliberately indifferent under the Eighth Amendment when they delayed seeing him for his reaction to Singulair and kept him on the medication despite Plaintiff having a negative reaction to the drug.**
>
> **Count 5:** **Wexford Health Sources, Inc. was deliberately indifferent under the Eighth Amendment to Plaintiff's serious medical needs by having a policy of understaffing the healthcare unit at Menard and a policy of not believing inmates medical complaints.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

## Count 1

Plaintiff states a viable claim for unconstitutional conditions of confinement against Baldwin, Jacqueline Lashbrook, and Dr. Siddiqui. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). He alleges that he experienced filthy conditions in his cell and throughout the prison. He also alleges that Lashbrook and Baldwin were aware of the conditions but failed to provide him with any cleaning supplies and that he wrote letters to Dr. Siddiqui about the conditions as Wexford staff were in charge of monitoring the conditions at the prison. Count 1 will proceed against Baldwin, Lashbrook, and Dr. Siddiqui.

## Count 2

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker,* 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill.1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.,* 610 N.E.2d 745, 749 (Ill.App.1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker,* 256 F.3d at 490.

Plaintiff has sufficiently alleged each component of this state-law claim, including that the conditions at Menard caused him emotional distress and fear that he would have an asthma attack and die. He will therefore be allowed to proceed on Count 2 as to Baldwin, Lashbrook, and Dr. Siddiqui. (Doc. 1, p. 16). However, Plaintiff has not alleged that Wexford caused or was aware of the conditions at Menard. As such, Wexford will be dismissed without prejudice from Count 2.

**Count 3**

Plaintiff has stated a viable deliberate indifference claim against Dr. Siddiqui and Dr. Caldwell for failing to provide him with an asthma inhaler. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement); *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective). Thus, Count 3 will proceed against Dr. Siddiqui and Dr. Caldwell.

**Count 4**

Plaintiff has also stated a viable deliberate indifference claim against Dr. Siddiqui, Frierdich, and Dr. Caldwell for failing to provide him with treatment after he had a negative

6

reaction to Singulair. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement); *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective). Count 4 will therefore proceed as to Dr. Siddiqui, Frierdich, and Dr. Caldwell.

**Count 5**

As to Plaintiff's claim against Wexford in Count 5, a corporation can be held liable for deliberate indifference if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff alleges Wexford maintains a policy and practice of understaffing the healthcare unit and of instructing its employees to view inmate's claims with suspicion and that these policies prevented him from receiving adequate care for his reaction to Singulair. These allegations are sufficient to state a claim against Wexford.

However, to the extent that Plaintiff alleges that Wexford is liable for the acts of its employees,[2] the Court notes that a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (*quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Section 1983 does not authorize *respondeat superior* or "supervisory liability." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (*citing Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). Section 1983 creates liability only for a

---

[2] Plaintiff makes numerous allegations throughout his Complaint that "Wexford run and staffed healthcare unit" acted with deliberate indifference to his medical condition.

7

defendant's personal acts or decisions. *Id.* Thus, Plaintiff fails to state a claim against Wexford based on supervisory liability.

## Motion for Counsel

In his Motion for Counsel (Doc. 2), Plaintiff indicates that he has sent letters to several attorneys but has not received any responses. Plaintiff claims that he will need help with discovery in this case. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[3] Therefore, Plaintiff's Motion for Counsel (Doc. 2) is **DENIED** without prejudice. Plaintiff may renew his request for the recruitment of counsel at a later date.

## Disposition

**IT IS HEREBY ORDERED** that Count 1 shall proceed against John Baldwin, Jacqueline Lashbrook, and Dr. Siddiqui.

**IT IS FURTHER ORDERED** that Count 2 shall proceed against John Baldwin, Jacqueline Lashbrook, and Dr. Siddiqui, but is **DISMISSED without prejudice** as to Wexford Health Sources, Inc.

**IT IS FURTHER ORDERED** that Count 3 shall proceed against Dr. Siddiqui and Dr. Caldwell, Count 4 shall proceed against Dr. Siddiqui, Frierdich, and Dr. Caldwell, and Count 5 shall proceed against Wexford Health Sources, Inc.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants John Baldwin, Jacqueline Lashbrook, Dr. Siddiqui, Dr. Caldwell, Frierdich, and Wexford Health Sources, Inc.

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

(1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

The Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days**

after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 4/16/2019**

___*/s/ Staci M. Yandle*___
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**