.IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY LUELLEN, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-CV-151-MAB |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| MOHAMMED SIDDIQUI, | ) |
| CHAD FRIERDICH, JOHN BLADWIN, | ) |
| JACQUELINE LASHBROOK, and | ) |
| REYNAL CALDWELL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motions for summary judgment on the issue of exhaustion filed by Defendants Wexford Health Sources, Inc., Mohammed Siddiqui, M.D., and Reynal Caldwell, M.D. (the "Wexford Defendants") (Doc. 30) and John Baldwin, Jacqueline Lashbrook, and Chad Frierdich (the "IDOC Defendants") (Doc. 36). For the reasons set forth below, the motions are granted.

### PROCEDURAL BACKGROUND

Plaintiff Larry Luellen is an inmate in the Illinois Department of Corrections and currently incarcerated at Stateville Correctional Center. On February 7, 2019, he filed this lawsuit pursuant to 42 U.S.C. § 1983 regarding purportedly unconstitutional conditions of confinement at Menard Correctional Center (Doc. 1). Following a threshold review of

the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

> **Count 1:** Eighth Amendment claim for deliberate indifference to Plaintiff's conditions of confinement at Menard against John Baldwin, Jacqueline Lashbrook, and Dr. Siddiqui.
>
> **Count 2:** State law claim for intentional infliction of emotional distress against Baldwin, Lashbrook, and Dr. Siddiqui based on their failure to remedy the conditions at Menard.
>
> **Count 3:** Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs against Dr. Siddiqui and Dr. Caldwell based on their refusal to give Plaintiff an inhaler for his asthma.
>
> **Count 4:** Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs against Dr. Siddiqui, Dr. Caldwell, and Chad Frierdich based on their delay in seeing Plaintiff for his negative reaction to Singulair and nevertheless keeping him on the medication.
>
> **Count 5:** Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs against Wexford Health Sources, Inc. based on its policy of understaffing the healthcare unit at Menard and a policy of not believing inmates medical complaints.

(Doc. 7).

The Wexford Defendants and the IDOC Defendants each filed a motion for summary judgment in August 2019, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Docs. 30, 36). Defendants submitted grievance records from the ARB and Menard Correctional Center, as well as, Plaintiff's cumulative counseling summary (Docs. 31-1, 31-2, 31-3; Doc. 37-1). The Wexford Defendants later provided via email a grievance log from Menard. All in all, the Defendants identified the following seven grievances in their motions for summary

judgment but did not discuss all of these grievances or provide copies of all of them (*see* Docs. 31, 37):

1. Emergency grievance (#468-12-17) dated December 27, 2017 (Doc. 31, p. 4),
2. Emergency grievance (#124-1-18) dated January 2, 2018 (Doc. 31, p. 4),
3. Second emergency grievance (#101-1-18) dated January 2, 2018 (Doc. 31, p. 3; Doc. 37, p. 2),
4. Grievance (#306-1-18) dated January 9, 2018 (Doc. 31, p. 2),
5. Emergency grievance (#113-8-18) dated August 3, 2018 (Doc. 31, p. 3; Doc. 37, p. 2),
6. Grievance (#584-8-18) dated August 16, 2018 (Doc. 31, p. 3),
7. Emergency grievance (#295-1-19) dated January 14, 2019 (Doc. 31, p. 4).

Plaintiff filed a response in opposition to the motions for summary judgment, in which he addressed five of the seven grievances mentioned by the Defendants,[1] stating that he was not "totally satisfied" with the initial responses he received, so he filed new grievances (Doc. 41). Plaintiff also mentioned one additional grievance: grievance (#280-1-19) dated January 13, 2019 (Doc. 41). Plaintiff concluded his brief by making the unadorned assertion, "[t]o this date I've never received any responses to my grievances and I did not know what more I could do, so I moved forward with my 1983 civil suit" (Doc. 41, p. 2).

The IDOC Defendants did not file a reply brief, but the Wexford Defendants did (Doc. 42). Along with their reply brief, the Wexford Defendants attempted to submit a copy of the December 27, 2017 emergency grievance, which they indicated was unrelated to the allegations in this lawsuit (Doc. 42, Doc. 42-1). But the grievance they submitted

---

[1] Plaintiff did not address the second emergency grievance (#101-1-18) dated January 2, 2018 or emergency grievance (#295-1-19) dated January 14, 2019 (*see* Doc. 41).

was dated December 23rd, not December 27th (*see* Doc. 42-1). They also attempted to provide a copy of the January 13, 2019 grievance brought up by Plaintiff, which they also argued was unrelated to the allegations in this lawsuit (Doc. 42, Doc. 42-2). However, the grievance they submitted was dated January 31st, not January 13th (*see* Doc. 42-2). They argued that Plaintiff's responses regarding the other grievances were essentially an acknowledgement that he did not fully exhaust any of his grievances (Doc. 42).

Plaintiff filed a sur-reply accusing the Wexford Defendants of falsifying information (Doc. 43). He pointed out that Defendants did not provide a copy of the December 27, 2017 grievance as they purported to, and he provided an accurate copy (Doc. 43; *see* Doc. 42-1). Plaintiff also submitted copies of the other grievances, as well as, arguments intended to "clarify" his previous responses (Doc. 43).

An evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was scheduled for March 19, 2020 (Doc. 52). The hearing was canceled, however, because the Court's operations were restricted as the COVID-19 pandemic in the United States intensified. The hearing was ultimately rescheduled for July 28, 2020 (Doc. 57). Kelly Pierce, a grievance officer at Menard, testified at the hearing, as did Plaintiff.

Following the hearing, the parties were ordered to provide additional documentary evidence regarding the January 13 and 14, 2019 grievances, which were identified by the parties in their briefs as pertinent to the claims in this case but for which almost no evidence was provided (Doc. 63).

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). Accord *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving.

*Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[2] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or

---

[2] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

## MATERIALS CONSIDERED BY THE COURT

As previously mentioned, Plaintiff filed a sur-reply (Doc. 43). The Local Rules provide that sur-replies are not permitted in this District. SDIL-LR 7.1(c). Consequently, the Court did not consider any of the arguments Plaintiff made in his sur-reply. The Court did, however, consider the documentary evidence he attached to the sur-reply because some of the documents were not previously provided by the parties and the parties relied on these documents during the *Pavey* hearing in questioning the witnesses.

Also, as previously mentioned, the Wexford Defendants submitted an additional exhibit to the Court via email the day before the *Pavey* hearing.[3] It was a copy of Menard's emergency grievance log from December 2017 and a copy of Menard's entire grievance log (both non-emergency and emergency grievances) from January 1, 2018 through September 14, 2018. The exhibit was a very poor-quality photocopy of the grievance log, which is an 18-column spreadsheet, in an *extremely* tiny font. It is nearly impossible to read a print-out of the log. The Court was able to zoom in on an electronic version of the

---

[3] The exhibit had previously been produced to Plaintiff in the Wexford Defendants' Supplemental Initial Disclosures, which were sent to Plaintiff on August 9, 2019.

log, but even then, it was still difficult to read due to the poor quality of the photocopy. Plaintiff, of course, did not have access to an electronic version of the log and could not zoom in. Defense counsel elicited testimony from Kelly Pierce about the relevant portions of the grievance log. Plaintiff was present for that testimony and able to cross-examine Ms. Pierce. Consequently, in deciding the motions for summary judgment, the Court only considered the grievance log to the extent that it was discussed by Ms. Pierce; the Court did not consider any portion of the grievance log that was *not* discussed at the hearing.

## FACTUAL BACKGROUND

In the complaint, Plaintiff alleged that his cell was filthy and he was not given any cleaning supplies (Doc. 1; Doc. 7). The ceiling fans outside of the cells were filthy and spread dust and debris into the air. The showers were covered in black mold. The "med tech room" had black mold, spiders, roaches, and mice. The dining room also had spiders, roaches, and mice, and birds sometimes got in and flew around while inmates were eating. The trays and cups in the dining room were often covered in leftover food and grease. Plaintiff further alleged that he was given a limited and inadequate supply of drinking water during the numerous occasions the prison was under a boil order. The cellhouses did not have adequate ventilation or heating/cooling systems. In the summer, the cellhouse doors were left open for air flow, which allows insects, pests, and allergens into the cellhouse. In the winter, propane heaters were run and the fumes were bothersome.

Plaintiff further alleged that as a result of the conditions in his cell and the rest of the prison, he experienced an increase in asthma attacks (Doc. 1; Doc. 7). He further

alleged that he wrote letters to Dr. Siddiqui about the conditions of the prison and its affects on his asthma, but Dr. Siddiqui did nothing. According to Plaintiff, Jacqueline Lashbrook and John Baldwin were also aware of the conditions but did nothing. Plaintiff also alleged that Dr. Siddiqui and Dr. Caldwell refused to give him "an asthma pump." They eventually prescribed Singulair, but Plaintiff had a bad reaction to the medication, and he did not receive any medical attention despite his repeated requests to the cellhouse officer. He filed an emergency grievance and wrote many letters regarding his condition and need for medical attention, which he claims were ignored by Dr. Siddiqui, Dr. Caldwell, and Nurse Frierdich.

As it pertains to the grievance process, Kelly Pierce testified that DR504F, which stands for Department Rule 504F, describes the grievance process step-by-step. DR504F and the grievance procedures are included in the orientation manual that every inmate receives when they arrive at the institution. A note in the cumulative counseling summary from August 18, 2017 indicates that Plaintiff participated in the orientation process, was issued an orientation manual, and signed for the manual (Doc. 31-3, p. 6). Kelly Pierce testified that if, for some reason, an inmate needs another copy of the orientation manual, they can request one from their counselor. The orientation manual is also available in the law library. Inmates can also contact their counselor if they have a question regarding the grievance process, such as how to file a grievance or how to appeal a grievance. And there is also a bulletin regarding the grievance process that runs on the inmate television channel.

At the hearing, Plaintiff affirmed that he knew he "had to exhaust his

administrative remedies by filing and appealing grievances," but claimed that he did not know what the process entailed. According to him, he never received the orientation manual, despite the note in the cumulative counseling summary to the contrary. And he could not view the orientation manual at the law library because although he had "put in multiple times for law library," he was only called to attend once in the two years that he was at Menard. Plaintiff testified that everything he knew about the process he had learned from other inmates. Plaintiff also admitted, however, that he never asked his counselor about the grievance process. He also admitted that he had a television at Menard, and therefore, he presumably had access to the inmate channel.

The first relevant grievance is an **emergency grievance (#468-12-17) dated December 27, 2017** (Doc. 43, pp. 6–8; *see also* Doc. 31-3, p. 6). In this grievance, Plaintiff complained that he is asthmatic and had requested an asthma pump twice since August but still had not received one. In "relief requested" section, Plaintiff asked the prison to "respond so I can exhaust my administrative remedies" (*Id.*). On December 29th, the warden determined that the grievance was not an emergency and instructed Plaintiff to submit the grievance in the normal manner. A corrections clerk returned the grievance to Plaintiff with a memo dated December 29th, informing Plaintiff that the warden determined the grievance was not an emergency, and he should "follow DR504F if [he] wish[ed] to pursue grievance issue. Plaintiff obviously received this memo because he submitted a copy of it with his sur-reply brief (Doc. 43, pp. 6–8).[4] It appears that Plaintiff

---

[4] Plaintiff testified that the documents he submitted with his sur-reply (Doc. 43) were his own personal records of those documents, as opposed to documents produced to him by Defendants in this case. The

did not resubmit the grievance in the normal manner as instructed because the documents produced by Plaintiff do not contain any responses from the counselor, the grievance officer, or the warden (*see* Doc. 43, pp. 6–8).

Instead, Plaintiff submitted **another emergency grievance (#124-1-18) on January 2, 2018** (Doc. 43, pp. 20–21; *see also* Doc. 31-3, p. 6). In the January 2nd grievance, he wrote, "This grievance is to follow up on grievance #468-12-17" regarding the failure to provide him with an "asthma pump" (Doc. 43, p. 21). In the "relief requested" section, Plaintiff wrote that he wanted an inhaler immediately "or the right to exhaust my administrative remedies so I can proceed with an [sic] 1983 civil suit" (*Id.*). The grievance office received the grievance on January 8th and returned it to Plaintiff that day with a memo that stated it "is a request about Grievance #468-12-17 which was deemed NON-Emergency on 12-29-17. Please follow proper procedure per DR 504 f" (*Id.*).

Plaintiff submitted a **second emergency grievance (#101-1-18) dated January 2, 2018** (Doc. 1, pp. 31–32; *see also* Doc. 31-3, p. 6). In this grievance, Plaintiff complained about the frigid temperatures in the "Westhouse" and the lack of adequate heat. He said there are broken windows, the cellhouse doors are constantly being opened, and fumes from the propane heaters that were being run are "toxic" and "hazardous." He further claimed that the fumes affected his asthma and he was without "an asthma pump because the medical staff hasn't given [him] one" (*Id.*). The warden received the grievance on January 9th and that same day determined that it was not an emergency (Doc. 1, pp. 31–

---

Court also notes the documents submitted by Plaintiff are not Bates stamped as they would be if they were copies produced by Defendants (*compare* Doc. 43 *with* Docs. 31-1, 31-2, 31-3, and 37-1).

32). Plaintiff was instructed to submit this grievance in the normal manner (*Id.*). It does not appear that Plaintiff did so because the copy of the grievance he provided does not contain any responses from the counselor, the grievance officer, or the warden (*see id.*). And the ARB has no record of Plaintiff appealing this grievance (*see* Doc. 31-1; Doc. 37-1). In his response to the motion for summary judgment, Plaintiff said that he was not "satisfied with the response or grievance number that was being issued to me" so he wrote another grievance on January 9th (Doc. 41, p. 1).

Plaintiff submitted a **non-emergency grievance (#306-1-18) dated January 9, 2018** (Doc. 31-2, pp. 6–8; *see also* Doc. 31-3, p 5). In this grievance, Plaintiff complained that he has chronic asthma and he has not been given an inhaler despite his repeated requests to various people. The grievance was received on January 16th and Plaintiff's counselor responded on February 5th with a memorandum from the Health Care Unit. The grievance does not contain any responses from the grievance officer or the warden (*see* Doc. 31-2, pp. 6–8). Kelly Pierce testified that, according to the Menard grievance log, Plaintiff never submitted it to the grievance officer for review. The ARB also has no record of Plaintiff appealing this grievance (*see* Doc. 31-1; Doc. 37-1). In his response to the motion for summary judgment, Plaintiff stated that he wrote the grievance on January 9th "and to no avail I was given again another grievance number" (Doc. 41, p. 1).

Plaintiff submitted an **emergency grievance (#113-8-18) dated August 3, 2018** (Doc. 31-2, pp. 3-5; *see also* Doc. 1, pp. 28–30; Doc. 31-3, p. 4). In this grievance, Plaintiff complained about a possible negative reaction to his new Singulair prescription and his requests for medical attention going unanswered. The warden received the grievance on

August 6th and deemed it an emergency on August 8th. The grievance officer reviewed the grievance on August 9th. After contacting the medical records department and asking them to schedule an appointment for Plaintiff, the grievance officer recommended denying the grievance as moot. The warden concurred and denied the grievance on August 17th. Kelly Pierce testified that the warden's response was given to Plaintiff on August 23, 2018. Plaintiff obviously received the warden's response because he attached it to his complaint in this matter (Doc. 1, p. 28). However, the ARB has no record of Plaintiff appealing this grievance (*see* Doc. 31-1; Doc. 37-1). In his response to the motion for summary judgment, Plaintiff indicated that he was not "totally satisfied with the response" so he wrote another grievance on the same issue on August 16th (Doc. 41, p. 1). At the *Pavey* hearing, however, Plaintiff testified that he mailed this grievance to the ARB but never got a response. He was unable to recall when he purportedly mailed it.

Plaintiff submitted a **non-emergency grievance (#584-8-18) dated August 16, 2018** (Doc. 31-2, pp. 1–2; *see also* Doc. 31-3, p. 3). This grievance contains, in pertinent part, a request from Plaintiff regarding the status of his previous grievance dated August 3rd. More specifically, Plaintiff indicates that he had yet to receive "my original copy back" of the August 3rd grievance and he wanted it so that he could "continue my process in exhausting all my administrative remedies regarding this issue." Plaintiff's counselor received the grievance on September 4th and responded on September 10th, indicating that the August 3rd grievance was still pending. The grievance does not contain any responses from the grievance officer or the warden (*see* Doc. 31-2, pp. 1–2). And the ARB has no record of Plaintiff appealing this grievance (*see* Doc. 31-1; Doc. 37-1).

In his response to the motion for summary judgment, Plaintiff indicated that his last grievance was filed on **January 13, 2019 and assigned number 280-1-19** (Doc. 41, p. 2). Initially, neither party provided a copy of this grievance or any further information about it in their briefing (*see* Doc. 31, Doc. 41, Doc. 42, Doc. 43), and neither party provided any testimony about this grievance at the *Pavey* hearing. However, following the hearing, the Court requested more information about this grievance and Plaintiff submitted a copy (Doc. 64, pp. 2–3). This grievance was marked as an emergency. Plaintiff complained that there was no heat (or inadequate heat) in the Westhouse. He further claimed that officers made things worse by leaving the cellhouse doors and windows open and even turning on fans. This grievance was received by the grievance office on January 16, 2019 (Doc. 31-3, p. 2; Doc. 65-1). It was deemed a non-emergency by the warden on January 17th, and returned to Plaintiff on January 18th (Doc. 64, pp. 2–3; Doc. 65-1). Plaintiff was instructed to submit this grievance in the normal manner but it does not appear that Plaintiff did so (*see* Doc. 64, pp. 2–3; Doc. 65-1). There is no record of any responses from the counselor, the grievance officer, or the warden on the face of the grievance submitted by Plaintiff (Doc. 64, pp. 2–3). The grievance log submitted by Defendants shows that it was never received back from Plaintiff for non-emergency review (Doc. 65-1). Finally, the ARB has no record of Plaintiff appealing this grievance (*see* Doc. 31-1; Doc. 37-1).

In their memorandum in support of their motion for summary judgment, the Wexford Defendants indicated that the cumulative counseling summary mentioned **an emergency grievance dated January 14, 2019 (#295-1-19)** (Doc. 31, p. 4; Doc. 31-3, p. 2). The cumulative counseling summary indicates this grievance, which complained about

"cancellation of his medication due to recall," was received by the grievance office on January 16, 2019 (Doc. 31-3, p. 2). Defendants did not provide a copy of this grievance or any further information about it in their briefing (*see* Doc. 31, Doc. 42), and neither did Plaintiff (*see* Docs. 41, 43). Neither party provided any testimony about this grievance at the *Pavey* hearing. Following the hearing, the Court requested more information about this grievance (Doc. 63). Neither party was able to submit a copy (*see* Doc. 64, Doc. 65). However, Defendants produced a grievance log from Menard, which shows this grievance was deemed a non-emergency by the warden and returned to Plaintiff on January 18th (Doc. 65-1). The grievance log shows that this grievance was never received back from Plaintiff for non-emergency review (Doc. 65-1). And the ARB has no record of Plaintiff appealing this grievance (*see* Doc. 31-1; Doc. 37-1).

Plaintiff testified that for every grievance he filed at Menard, he mailed a copy to the ARB. He said that he placed his appeals in the mail but never got any responses. He doesn't know what happened to his grievances after he put them in the mail, and he figured that "Menard hindered his ability to get the grievance out . . . . Menard thwarted my ability to get it through the mailing process." When asked to specify exactly which grievances he appealed to the ARB, the only one Plaintiff identified was the emergency grievance (E50 #113-8-18) dated August 3, 2018. Plaintiff also noted that the only appeal reflected in the ARB's records was the grievance dated August 9, 2019, regarding the conditions of the inmate kitchen at Menard, which he placed in the mailbox to the ARB

on the day he left Menard (*see also* Doc. 37-1).[5]

## DISCUSSION

Plaintiff filed numerous grievances relevant to the claims in this case. Before deciding if any of the grievances were fully exhausted, the Court must first look at whether the grievance process was actually available to Plaintiff. *See Ross v. Blake*, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016) ("Under § 1997e(a), the exhaustion requirement hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") (internal quotation marks and alterations omitted). Administrative remedies are available "only if a prisoner has been notified of their existence" and the process has been "communicated in a way reasonably likely to be understood." *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018). The burden is on the prison to "affirmatively provide the information needed to file a grievance." *Id.* at 538.

At the *Pavey* hearing, Plaintiff admitted that he knew he had to exhaust his administrative remedies by filing and appealing grievances, but he claimed he did not know all of the steps that the grievance process entailed because he never received an orientation manual. However, his testimony is directly contradicted by the cumulative counseling summary which indicates that Plaintiff attended orientation, received a manual, and signed for it. The grievance process was also available in the law library. It was also explained on a bulletin that ran on the inmate television channel, and Plaintiff

---

[5] This grievance was not submitted until some six months after Plaintiff filed suit in this case on February 7, 2019 (Doc. 1). Therefore, it cannot be used to exhaust Plaintiff's claims in this case.

had a television. Inmates could also ask their counselors to explain the grievance process, but Plaintiff never did so. The evidence demonstrates that Menard affirmatively provided and/or made available information regarding the grievance process in a number of different ways. To the extent that Plaintiff did not know all of the steps that the grievance process entailed, it is because he did not avail himself of the information provided by the prison. As the adage goes, "you can lead a horse to water but you can't make him drink."

The Court further concludes that none of the relevant eight grievances outlined above were fully exhausted prior to filing suit. The evidence shows that Plaintiff never pursued any of his grievances past the first response he received. Instead, he would simply file another grievance and start the process anew. Specifically, Plaintiff submitted emergency grievances dated December 27, 2017 (#468-12-17), January 2, 2018 (#101-1-18), January 13, 2019 (#280-1-19), and January 14, 2019 (#295-1-19), which were all deemed non-emergencies by the warden. There is no indication from the documentary evidence that Plaintiff resubmitted these grievances through the normal process as required, and Plaintiff never testified that he did so. A second emergency grievance dated January 2, 2018 (#124-1-18) was rejected as an improper grievance and Plaintiff did not pursue it any further. Plaintiff also submitted non-emergency grievances dated January 9, 2018 (#306-1-18) and August 16, 2018 (#584-8-18), both of which his counselor responded to. There is no indication from the face of the grievances that Plaintiff submitted for a second level of review to the grievance officer, and Plaintiff never testified that he did so.

As for the emergency grievance dated August 3, 2018 (E50 #113-8-18), this grievance was deemed an emergency by the warden and expedited. Plaintiff received the

warden's response on August 23, 2018. The ARB has no record of Plaintiff appealing this grievance. But Plaintiff testified that he *did* appeal this grievance, as well as all the others, to the ARB. His testimony, however, was not credible. Plaintiff originally said in his response brief that he was not "totally satisfied with the response" to the August 3rd grievance so he wrote another grievance on the same issue on August 16th (Doc. 41, p. 1). It wasn't until the *Pavey* hearing that Plaintiff said he appealed this grievance to the ARB. His testimony regarding his purported appeals to the ARB was vague and jumbled, and it was extremely difficult to discern exactly what Plaintiff was trying to say, despite repeated efforts by defense counsel and the undersigned to clarify. Plaintiff could not provide a coherent narrative about the steps he took to exhaust each grievance, which he tried to detract from by repeatedly throwing out buzzwords related to exhaustion, like "thwarted" and "hindered." In fact, Plaintiff used the word "thwarted" some nine times within a matter of minutes. Furthermore, it is simply not plausible that Plaintiff mailed every grievance at issue in this lawsuit to the ARB—eight grievances total—by personally placing them in a mailbox in the cellhouse, but the ARB never received a single one of his appeals because someone at the prison tampered with the mail to ensure they were never received.

In conclusion, the grievance process was available to Plaintiff, yet he never completed all of the procedural steps of the process with respect to any of his grievances. Therefore, none of his grievances were fully exhausted before he filed suit and Defendants are entitled to summary judgment.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Wexford Health Sources, Inc., Mohammed Siddiqui, M.D., and Reynal Caldwell, M.D. (Doc. 30) is **GRANTED**. The motion for summary judgment on the issue of exhaustion filed by John Baldwin, Jacqueline Lashbrook, and Chad Frierdich (Doc. 36) is **GRANTED**.

This case is dismissed without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 18, 2020**

                                                   s/ Mark A. Beatty
                                                   **MARK A. BEATTY**
                                                   **United States Magistrate Judge**